IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AARON and BREANNA CHEATWOOD, individually and as Next Best Friend of D.C., a minor child, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>CHRISTIAN BROTHERS SERVICES, et al., )<br>)<br>Defendants. )<br>_____) | No. 2:16-cv-2946-HRH |

O R D E R

Motion to Quash

Defendant Sentinel Air Medical Alliance moves to quash or modify plaintiffs' subpoena duces tecum served on non-party, Bryan E. Bledsoe, D.O.[1] This motion is opposed.[2] Oral argument was requested but is not deemed necessary.

Background

In April 2015, plaintiffs' son (D.C.) was transported by a medical transport helicopter from Yuma Regional Medical Center to Banner Cardon Children's Medical Center.

---

[1] Docket No. 73.

[2] Docket No. 74.

Defendant Christian Brothers Employee Benefit Trust denied payment for the cost of the air transport, allegedly based on an opinion obtained from Sentinel that the air transport was not medically necessary. In their amended complaint, plaintiffs assert breach of contract and breach of the duty of good faith and fair dealing claims against Christian Brothers Services (CBS) and the Trust. Plaintiffs have alleged that CBS and the Trust "acted unreasonably by relying upon the opinion of Sentinel Air, an obviously biased and anti-claimant medical reviewer, to deny [p]laintiffs' claim."[3] Plaintiffs assert an aiding and abetting claim against Sentinel based on allegations that Sentinel aided and abetted CBS's and the Trust's breach of the duty of good faith and fair dealing.

Dr. Bledsoe did a medical necessity review for Sentinel. In his initial report, Dr. Bledsoe concluded that air transport had not been medically necessary in D.C.'s case.[4] In a supplemental report, Dr. Bledsoe again concluded that air transport had not been medically necessary.[5]

In the subpoena served on Dr. Bledsoe, plaintiffs requested seven different categories of documents, and the parties were able to reach an agreement as to the production of

---

[3] First Amended Complaint at 10, ¶ 62, Docket No. 11.

[4] Exhibit 2, Plaintiffs' Response to Sentinel's Motion to Modify or Quash Plaintiffs' Subpoena Duces Tecum to Bryan E. Bledsoe, D.O., Docket No. 74.

[5] Exhibit 3, Plaintiffs' Response to Sentinel's Motion to Modify or Quash Plaintiffs' Subpoena Duces Tecum to Bryan E. Bledsoe, D.O., Docket No. 74.

documents in response to requests Nos. 1-4.[6] However, the following three requests are still at issue:

> 5. Reports of medical necessity reviews you have participated in (solely or with others) from January 1, 2013 to present (the identity of the persons examined may be redacted, or alternatively plaintiff[s] will agree to enter into a binding stipulation to maintain the confidentiality of the identities of the persons examined);
>
> 6. All W-9's received for compensation derived directly or indirectly from your work performing medical necessity reviews for the tax years 2013, 2014, 2015 and 2016; and
>
> 7. The number of medical necessity reviews you have participated in (solely or with others) from January 1, 2013, to the present, broken down by the number performed on behalf of plaintiffs and the number performed on behalf of defendants.[7]

Sentinel now moves to quash these three requests.[8]

---

[6]Requests Nos. 1-3 involve communications and documents related to the medical necessity review Dr. Bledsoe did in this case and Request No. 4 asks for "[i]nstructions, reports, guidelines, and/or forms received from Sentinel, The Trust, and/or CBS, including their attorneys[.]" Exhibit A to Subpoena at 3 (unnumbered), Exhibit B, Defendant Sentinel Air Medical Alliance's Motion to Modify or Quash Plaintiffs' Subpoena Duces Tecum to Bryan E. Bledsoe, D.O., Docket No. 73.

[7]Id. at 3-4 (unnumbered).

[8]"A party has standing to challenge a subpoena served on another entity only if the party can show it has a personal right or privilege regarding the subject matter of the subpoena." Blotzer v. L-3 Communications Corp., 287 F.R.D. 507, 509 (D. Ariz. 2012). Plaintiffs do not contend that Sentinel lacks standing to challenge the subpoena that was served on Dr. Bledsoe.

Discussion

"Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena." ATS Products, Inc. v. Champion Fiberglass, Inc., 309 F.R.D. 527, 530 (N.D. Cal. 2015). Rule 45 provides, in pertinent part, that

> [o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> * * *
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). "'[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.'" ATS Products, 309 F.R.D. at 531 (quoting Gonzales v. Google, Inc., 234 F.R.D. 674, 680 (N.D. Cal. 2006)). "'Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries.'" Id. (quoting Gonzales, 234 F.R.D. at 679–80). "[A] subpoena seeking completely irrelevant information might be quashed as unduly burdensome[.]" Miller v. York Risk Services Group, Case No. 2:13–cv–1419 JWS, 2014 WL 4230783, at *1 (D. Ariz. Aug. 27, 2014). "The party who moves to quash a subpoena bears the 'burden of persuasion' under Rule 45(c)(3)." ATS Products, 309 F.R.D. at 531 (quoting Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005)). This "burden is a heavy one." In re Yassai, 225 B.R. 478, 484 (Bankr. C.D. Cal. 1998).

Request No. 5. In Request No. 5, plaintiffs seek all of the medical necessity reviews that Dr. Bledsoe has done during the last five years. Sentinel represents that Dr. Bledsoe has done more than 100 medical necessity reviews during the past five years.[9] Sentinel argues that it would be unduly burdensome for Dr. Bledsoe to produce these reviews, not because there are so many of them, but because these reviews are irrelevant to plaintiffs' claims.

Plaintiffs, however, argue that Dr. Bledsoe's other medical necessity reviews are relevant to their claims because they may show that he is biased and evidence showing a physician's bias is relevant and discoverable in bad faith cases. For example, in Kravetz v. Paul Revere Life Ins. Co., Case No. CV–08–1060–PHX–FJM, 2009 WL 77649, at *1 (D. Ariz. Jan. 12, 2009), the court rejected the argument that other IME reports performed by a doctor retained by the defendant were not relevant to the plaintiff's claim that the doctor was biased because he "had no real medical practice and the bulk of his business is as an expert for insurance companies."

Plaintiffs also cite to Hangarter v. Provident Life and Accident Insurance Co., 373 F.3d 998 (9th Cir. 2004), in support of their argument that Dr. Bledsoe's other medical necessity reviews are relevant. There, Hangarter asserted a bad faith claim against her disability insurer. Id. at 1005. As part of her evidence of bias, Hangarter presented evidence that the insurer had retained the same doctor to do IMEs "nineteen times from 1995 to 2000"

---

[9]Defendant Sentinel Air Medical Alliance's Motion to Modify or Quash Plaintiffs' Subpoena Duces Tecum to Bryan E. Bledsoe, D.O. at 6, Docket No. 73.

and "that in thirteen out of thirteen cases involving claims for total disability, Dr. Swartz rejected the insured's claim that he or she was totally disabled." Id. at 1011.

In addition, plaintiffs cite to Hertz v. Hartford Life and Accident Insurance Co., 991 F. Supp. 2d 1121 (D. Nev. 2014). There, Dr. Rim had done medical reviews on which Hartford had relied to deny Hertz disability benefits. Id. at 1129-31. As evidence that Hartford's structural conflict of interest had impacted its benefits decision, Hertz argued that Dr. Rim was biased. Id. at 1136. The evidence showed that during the relevant time, "Dr. Rim reviewed fourteen (14) claims for Hartford", and that "of those fourteen (14) claims reviewed, Dr. Rim did not find that a single claimant was completely unable to perform any type of work." Id. In other words, "Dr. Rim found that 100% of all claimants could perform some type of work." Id. The court found "these statistics strongly suggest that both MLS [the third party service for whom Dr. Rim worked] and Dr. Rim harbored a significant bias towards finding a claimant capable of performing some type of work." Id.

Similar to Hangarter and Hertz, plaintiffs argue that the facts indicate that both Sentinel and Dr. Bledsoe harbor a significant bias against claims involving medical air transport and thus plaintiffs argue that Dr. Bledsoe's other medical necessity reviews are plainly relevant. Plaintiffs argue that it is significant that Dr. Bledsoe has done over 100 reviews in a 5-year period (an average of one review every two and half weeks) and that he appears to work exclusively for Sentinel and they argue that they ought to be allowed to further explore his bias.

Although evidence of bias may be relevant to a bad faith claim, Dr. Bledsoe's other medical necessity reviews are not likely to lead to evidence of bias, largely because they involve facts and circumstances different from the facts and circumstances involved in this case. Plaintiffs would have no way of demonstrating that each review was biased because plaintiffs do not know the underlying facts and circumstances of each review. Any attempt to compare Dr. Bledsoe's conclusions in each of these reviews to the conclusion he reached in this case would require a mini-trial on each of the claims that gave rise to the other reviews. Such mini-trials would only confuse and mislead a jury. In addition, given that medical necessity reviews are likely only sought in questionable cases, it would not be surprising if many of Dr. Bledsoe's other reviews were favorable to the insurer, thereby calling into question the relevancy of these reviews to plaintiffs' bad faith claim.

The court finds Bronick v. State Farm Mutual Auto Insurance Co., Case No. CV–11–01142-PHX–JAT, 2013 WL 3716600 (D. Ariz. July 15, 2013), instructive on this issue. There, Bronick was involved in a rear-end collision and claimed that her torn Achilles tendon was a result of the accident. Id. at *1. Bronick made a UIM claim and State Farm questioned whether the torn Achilles tendon had been caused by the accident. Id. at *2. State Farm required plaintiff to undergo an IME, which was done by Dr. Hartzler. Id. Dr. Hartzler concluded that plaintiff's Achilles tendon injury was not a result of the accident and based on his report, State Farm denied Bronick's UIM claim. Id. at *2-3. Bronick brought claims of breach of contract and bad faith against State Farm. Id. at *3. On motion for

summary judgment, Bronick argued that "the hiring of Dr. Hartzler is evidence in and of itself that [State Farm] knew its conduct was unreasonable." Id. at *9. Bronick argued that Dr. Hartzler was biased and offered evidence that showed that "Dr. Hartzler ha[d] performed 151" IMEs, of which "only five of them favored the patients and showed their injuries and treatments were justified causally to the subject accidents." Id. The court found "[]this statistic is wholly irrelevant to the facts of [Bronick's] case" because the facts of those 151 cases were unknown. Id. at *10. The court explained that "[t]he relevant question is whether Dr. Hartzler was unfair and biased, not how many times Dr. Hartzler was hired or how many times he reached a favorable conclusion for a defendant insurer absent the unique facts of each case." Id.

Similarly here, Dr. Bledsoe's other reports are irrelevant to plaintiffs' claims because they involve other parties and other factual situations. Dr. Bledsoe's other medical necessity reviews have nothing to do with whether the review Dr. Bledsoe provided in plaintiffs' case was biased. "The relevant question is whether Dr. [Bledsoe] was unfair and biased, not how many times Dr. [Bledsoe] was hired or how many times he reached a favorable conclusion for a defendant insurer absent the unique facts of each case." Id. Dr. Bledsoe's other medical necessity reviews are not relevant to plaintiffs' claims. Request No. 5 is quashed.

Request No. 6. In Request No. 6, plaintiffs ask Dr. Bledsoe to produce financial information (in the form of W-9s) related to the compensation he has received for performing medical necessity reviews in 2013-2016. Sentinel contends that Dr. Bledsoe agreed to

provide information regarding what percentage of his income is derived from his work with Sentinel. Sentinel argues that this is sufficient and that plaintiffs' request for the actual amount of income that Dr. Bledsoe earned from Sentinel is improper under Arizona law. Sentinel cites to <u>American Family Mutual Insurance Co. v. Grant</u>, 217 P.3d 1212 (Ariz. Ct. App. 2009), in support of its argument.

There, Allo had been in a motor vehicle accident and submitted a UIM claim to American Family for injuries she claimed were caused by the accident. <u>Id.</u> at 1214. American Family questioned whether Allo's knee surgery and on-going treatment were a result of the accident and retained Dr. Zoltan to evaluate her claim. <u>Id.</u> After American Family denied her UIM claim, Allo sued American Family, asserting breach of contract and bad faith claims. <u>Id.</u> Allo's bad faith claim was based on her contention that "American Family knew Dr. Zoltan was biased against personal injury plaintiffs and that he would render opinions adverse to her interests." <u>Id.</u> Allo requested the amount of income that Dr. Zoltan had earned from doing IMEs and supporting financial documents such as "personal tax returns, company tax returns, shareholder statements, accounting ledgers, 1099s or W–2s, and profit sharing documents...." <u>Id.</u> at 1215. The court "caution[ed] that production of exhaustive financial documentation like that demanded in Allo's subpoena is appropriate only in the most compelling of circumstances, and only after less intrusive means of obtaining bias-related evidence have been explored." <u>Id.</u> at 1219. Sentinel argues that there are no compelling circumstances here because plaintiffs already know that Dr. Bledsoe only

does medical necessity reviews for Sentinel and they know what percentage of his income is derived from this activity. In light of this information, Sentinel argues that it would be unduly intrusive to require Dr. Bledsoe to provide plaintiffs with his actual income.

Plaintiffs' request for Dr. Bledsoe's W-9s is much less intrusive than what was requested in <u>Grant</u> and is not improper under Arizona law. Plaintiffs have only requested that Dr. Bledsoe produce any W-9s he has received in connection with his work as a medical reviewer. This financial information is relevant to plaintiffs' claims. Request No. 6 is not quashed. Dr. Bledsoe shall produce the requested W-9s.

<u>Request No. 7</u>. In Request No. 7, plaintiffs ask Dr. Bledsoe to provide the number of medical necessity reviews he has done since January 1, 2013, to the present broken down by whether the reviews were done for plaintiffs or defendants. After Sentinel advised plaintiffs that Dr. Bledsoe does not provide his medical opinion in the context of a lawsuit, but rather is simply asked to provide a medical necessity opinion, plaintiffs requested that Dr. Bledsoe provide information regarding how many opinions he has provided for health plan benefits providers versus how many he has provided for individuals submitting claims for benefits. Sentinel argues that this request is illogical because individuals who submit claims for health care benefits rarely, if ever, independently seek opinions as to whether their claims seek payment for necessary services.

Plaintiffs make no argument in response, presumably because they already have the answer to Request No. 7, which is that Dr. Bledsoe does not know, at the time he is doing

a review, whether it is for a defendant or plaintiff. Dr. Bledsoe need not further respond to Request No. 7.

## Conclusion

Sentinel's motion to quash[10] is denied in part and granted in part. The motion is denied as to Request No. 6, but is granted as to Request Nos. 5 and 7.

DATED at Anchorage, Alaska, this 3rd day of January, 2018.

/s/ H. Russel Holland
United States District Judge

---

[10]Docket No. 73.