WO    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

AARON and BREANNE CHEATWOOD, )
individually and as Next Best Friend of )
D.C., a minor child, )
 )
        Plaintiffs, )
 )
 vs. )
 )
CHRISTIAN BROTHERS SERVICES, et al., )
 ) No. 2:16-cv-2946-HRH
        Defendants. )
_____)

O R D E R

Motion to Quash; Motion to Compel

Non-party Tri-State Care Flight, L.L.C. moves to quash Request Nos. 2 through 12 of a subpoena served upon it by defendant Sentinel Air Medical Alliance.[1] This motion is opposed and Sentinel cross-moves to compel Tri-State to respond to Request Nos. 2 through 12, as modified by Sentinel.[2] Sentinel's motion to compel is opposed.[3] Oral argument was requested but is not deemed necessary.

---

  [1]Docket No. 92.

  [2]Docket No. 102.

  [3]Docket No. 110.

-1-

Background

Plaintiffs are Aaron and Breanne Cheatwood, individually, and as next best friend of D.C., a minor child. Defendants are Christian Brothers Services ("CBS"); Christian Brothers Employee Benefit Trust ("the Trust"); and Sentinel Air Medical Alliance.

In April 2015, D.C. was transported by a medical transport helicopter from Yuma Regional Medical Center to Banner Cardon Children's Medical Center in Mesa, Arizona. Tri-State is the air ambulance company that transported D.C. to Mesa. Tri-State billed plaintiffs $61,566 for the air transport. The Trust denied payment for the cost of the air transport, allegedly based on an opinion it obtained from Sentinel that the air transport was not medically necessary and that the charges were not reasonable.

In their amended complaint, plaintiffs assert breach of contract and breach of the duty of good faith and fair dealing claims against CBS and the Trust. Plaintiffs have alleged that CBS and the Trust "acted unreasonably by relying upon the opinion of Sentinel Air, an obviously biased and anti-claimant medical reviewer, to deny [p]laintiffs' claim."[4] Plaintiffs assert an aiding and abetting claim against Sentinel based on allegations that Sentinel aided and abetted CBS's and the Trust's breach of the duty of good faith and fair dealing.

Sentinel contends that plaintiffs have disclosed $61,566 as special damages, other unspecified "financial harm", and damages for mental and emotional distress. Sentinel contends that plaintiffs are asserting that the outstanding bill from Tri-State for the cost of

---

[4]First Amended Complaint at 10, ¶ 62, Docket No. 11.

the air transport has become a threat to their credit rating. But, Sentinel contends that plaintiffs have, so far, not produced any evidence to support this assertion, and Sentinel contends that it is possible that plaintiffs are not being pursued by Tri-State for payment. Sentinel also contends that plaintiffs' claims are based on a theory that Sentinel provides biased opinions and that in developing this theory, plaintiffs have focused on Sentinel's company mission, which is "to provide solutions to effectively control rates and ensure proper utilization for air transport services."[5] Sentinel contends that in order to defend against plaintiffs' bias theory, it will need to provide evidence of Tri-State's billing practices.

On October 17, 2017, Sentinel served a subpoena on Tri-State, which contained twelve requests for documents. Request No. 1 sought Tri-State's records as they pertained to D.C. but did not actually name D.C., instead referring only to a "patient."[6] Although Request No. 1 indicated that there was a release of information attached to the subpoena that identified the patient,[7] no release of information was attached. Request Nos. 2-12 sought commercial records and contracts as they pertained to Tri-State's business practices in Arizona. The compliance date stated on the subpoena was November 7, 2017.[8]

---

[5]Defendant Sentinel Air Medical Alliance's Reply [etc.] at 6, Docket No. 116.

[6]Exhibit A to Subpoena [etc.], Exhibit A, Non-Party Tri-State's Motion to Quash [etc.], Docket No. 92.

[7]Id.

[8]Subpoena, Exhibit A, Non-Party Tri-State's Motion to Quash [etc.], Docket No. 92.

Tri-State contends that prior to November 7, 2017, it informed Sentinel that it could not comply with the subpoena without a patient authorization form. Cheryl Brackney, a paralegal for Tri-State, avers that "prior to November 7, 2017, I contacted counsel for Sentinel, explaining that Tri-State could not respond to the Sentinel Subpoena because there was no patient-identifying information included. Additionally, I told Sentinel that Tri-State could not provide the requested information because the timeframe was too broad."[9] Brackney further avers that "[o]ver the next few weeks, I continued to exchange voicemails with Sentinel's attorney regarding the lack of patient-identifying information and Tri-State's concerns regarding the scope of the request[s]."[10]

Sentinel's counsel contends that she does not recall Brackney ever mentioning in her voicemails that Tri-State believed the subpoena was overbroad.[11] Sentinel contends that it requested that Tri-State comply with Request Nos. 2-12 pending receipt of the patient authorization form. Brackney, however, avers that "Sentinel never directed me to respond to requests 2 through 12 while we were discussing the problems with the Sentinel Subpoena."[12]

---

[9]Declaration of Cheryl Brackney at 2, ¶ 5, Exhibit A, Non-Party Tri-State Care Flight, L.L.C.'s Reply [etc.], Docket No. 110.

[10]Id. at 2, ¶ 6.

[11]Defendant Sentinel Air Medical Alliance's Reply [etc.] at 3, n.2, Docket No. 116.

[12]Brackney Declaration at 2, ¶ 10, Exhibit A, Non-Party Tri-State Care Flight, L.L.C.'s Reply [etc.], Docket No. 110.

On November 29, 2017, Sentinel provided the patient authorization form to Tri-State. On December 14, 2017, counsel for Tri-State and Sentinel met and conferred and Tri-State agreed to respond to Request No. 1[13] and Sentinel agreed to narrow the scope of Request Nos. 2-12.[14] The modified requests are as follows:

> Request No. 2: Those contracts and/or agreements with Yuma Regional Medical Center regarding the provision of air ambulance services to patients that were in effect between 2014-2016.
>
> Request No. 3: Those contracts and/or agreements with Banner Desert Medical Center (the receiving hospital in this case) that relate to the provision of air ambulance services and that were in effect between 2014-2016.
>
> Request No. 4: Those contracts and/or agreements that relate to the charges/pricing for air ambulance services in Arizona between Tristate and Medicaid in effect between 2014-2016.
>
> Request No. 5: Documents related to marketing and/or business development that were used to promote Tristate's air ambulance services to Yuma Regional Medical Center and/or Banner Desert Medical Center between 2014 and 2016. This request includes,

---

[13]Tri-State contends that in response to Request No. 1 it has produced "all documents in its possession or control relating to the air ambulance transportation" of D.C., including "all correspondence between Tri-State, Christian Brothers Services..., and the Cheatwoods, a log of every action taken by Tri-State related to the services provided to the Cheatwoods, and flight logs for the actual air ambulance transportation." Non-Party Tri-State Care Flight, L.L.C.'s Reply [etc.] at 2, Docket No. 110.

[14]Email from Karen Stafford to Matt Smith at 1, Exhibit B, Non-Party Tri-State's Motion to Quash [etc.], Docket No. 92.

but is not limited to, flyers, brochures, presentations, emails, and/or letters.

Request No. 6: Contracts and/or agreements between Tristate and any insurance company and/or health care benefit provider, including but not limited to any managed care contracts, related to air ambulance services provided by Tristate in Arizona in effect between 2014 and 2016.

Request No. 7: Written complaints and/or reviews against Tristate for air ambulance services rendered in Arizona between 2014-2016. This request does not seek private information about patients, including patient names or other private health information as defined by HIPAA, and the documents produced in response to this request may be redacted to conceal such information.

Request No. 8: A copy of all billed charges billed by Tristate Careflight [to] patients traveling from Yuma Regional Medical Center to Banner Desert Medical Center ... for the years 2014 and 2015. This request does not seek medical records, but simply the amounts charged, and any patient identifying information may be redacted.

Request No. 9: All policies and procedures Tristate used to determine whether air transportation is considered to be medically necessary that were in effect between 2014-2016.

Request No. 10: All policies and procedures that were in effect between 2014-2016 related to billing patients for services when those services/charges are not covered through insurance and/or other health benefit plans or for individuals who are not insured or who have no health plan benefits.

>   Request No. 11:   Financial reports for air ambulance services provided from bases in Arizona that show gross revenue, net revenue, operating expenses, non-operating expenses and net income for the years 2014-2016.
>
>   Request No. 12:   Documents showing the following for years 2014-2016: air ambulance charges, payments, payor information, and contractual adjustments and write offs.[15]

Sentinel requested that Tri-State notify it by December 19, 2017 as to whether Tri-State would respond to the modified requests.[16] On December 19, 2017, Tri-State informed Sentinel that it would not respond to Request Nos. 2-12, as modified, because they were unduly burdensome and requested confidential commercial information.

Tri-State's motion to quash Request Nos. 2-12 followed. Sentinel responded to the motion to quash by filing a motion to compel Tri-State to respond to Request Nos. 2-12. These two motions are now ready for disposition.

## Discussion

"Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena." ATS Products, Inc. v. Champion Fiberglass, Inc., 309 F.R.D. 527, 530 (N.D. Cal. 2015). Rule 45(d)(3)(A) provides, in pertinent part, that

---

[15]Defendant Sentinel Air Medical Alliance's Response [etc.] at 5-6, Docket No. 102 (emphasis omitted).

[16]Email from Karen Stafford to Matt Smith at 1, Exhibit B, Non-Party Tri-State's Motion to Quash [etc.], Docket No. 92.

> [o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> * * *
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

"The party who moves to quash a subpoena bears the 'burden of persuasion' under Rule 45(c)(3)." ATS Products, 309 F.R.D. at 531 (quoting Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005)). This "burden is a heavy one." In re Yassai, 225 B.R. 478, 484 (Bankr. C.D. Cal. 1998).

As an initial matter, Sentinel argues that Tri-State has waived its right to object to Request Nos. 2-12. "A nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objections have been waived." Moon, 232 F.R.D. at 636. Rule 45(d)(2)(B) provides that "[a] person commanded to produce documents or tangible things ... may serve on the party or attorney designated in the subpoena a <u>written objection</u> to inspecting, copying, testing, or sampling any or all of the materials...." Rule 45(d)(2)(B) further provides that any objections to a subpoena duces tecum "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."

Although Tri-State may have objected to the scope of Request Nos. 2-12 prior to November 7, 2017, this objection was not made in writing. Because Rule 45 expressly

requires that objections be in writing, any oral objection by Tri-State was insufficient. Thus, Tri-State failed to timely object to Request Nos. 2-12.

However, "'[i]n unusual circumstances and for good cause, ... the failure to act timely will not bar consideration of objections [to a Rule 45 subpoena].'" Moon, 232 F.R.D. at 636 (quoting McCoy v. Southwest Airlines Co., Inc., 211 F.R.D. 381, 385 (C.D. Cal. 2002)).

> "Courts have found unusual circumstances where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena."

Voxpath RS, LLC v. LG Electronics U.S.A., Inc., Case No. MC 13–004–TUC–CKJ, 2013 WL 5744045, at *3 (D. Ariz. Oct. 23, 2013) (quoting McCoy, 211 F.R.D. at 385).

All three of these requirements have been met here. First, Sentinel's subpoena, as originally issued, was overbroad on its face and exceeded the bounds of fair discovery because Sentinel, for the most part, requested documents for a period of January 1, 2010 to present. This temporal scope was much too broad in a case that involves a single air transport in 2015. Second, Tri-State is a non-party acting in good faith. Tri-State's contention that it did not know who the patient was is somewhat disingenuous, given that the subpoena named Aaron and Breanne Cheatwood and Tri-State's bills have been addressed to Aaron Cheatwood.[17] However, Sentinel's counsel represents that Brackney indicated that part of

---

[17]Exhibit 2, Defendant Sentinel Air Medical Alliance's Reply [etc.], Docket No. 116.

the problem Tri-State had in responding to the subpoena was that "Air Methods recently acquired Tri-State" and so "she was unsure what documents would still be in Tri-State's possession."[18]  Tri-State plainly had some issues with complying with the subpoena, and it promptly contacted Sentinel to discuss those issues.  Third, counsel for Tri-State and Sentinel attempted to resolve the issues with the subpoena prior to Tri-State filing the instant motion to compel.  Thus, unusual circumstances exist in this case and the court will consider Tri-State's untimely objections.

Tri-State first argues that Request Nos. 2-12 are unduly burdensome because they seek irrelevant information.  "[A] subpoena seeking completely irrelevant information might be quashed as unduly burdensome[.]"  Miller v. York Risk Services Group, Case No. 2:13–cv–1419 JWS, 2014 WL 4230783, at *1 (D. Ariz. Aug. 27, 2014).  'Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries.'"  ATS Products, 309 F.R.D. at 531 (quoting Gonzales, 234 F.R.D. at 679–80).  "Any information sought by means of a subpoena must be relevant to the claims and defenses in the underlying case."  Gonzales, 234 F.R.D. at 680.

Sentinel, however, argues that Tri-State, as a non-party, cannot raise relevancy objections.  See e.g., Ghandi v. Police Dep't of City of Detroit, 74 F.R.D. 115, 123 (D.C. Mich. 1977) ("the Court has serious reservations about the propriety of a non-party deponent moving to quash a subpoena duces tecum on the ground that the information sought is not

---

[18]Defendant Sentinel Air Medical Alliance's Reply [etc.] at 3, Docket No. 116.

relevant to the pending action"); Cooney v. Sun Shipbuilding & Drydock Co., 288 F. Supp. 708, 717 (D.C. Pa. 1968) (because non-parties have "no interest in the outcome of the case ... arguments as to 'relevancy' and 'materiality' are not appropriate concerns"). But, other "courts have held that non-parties may raise relevancy objections to subpoenas...." Laborers Pension Trust Fund-Detroit and Vicinity v. CRS Poured Concrete Walls, Inc., Case No. 04-CV-74714-DT, 2006 WL 3804912, at *5 (E.D. Mich. Dec. 22, 2006) (citation omitted). In this case, it is appropriate to consider Tri-State's relevancy objections to Request Nos. 2-12, as modified, in large part because Tri-State may have a financial interest in this case if, as appears to be the case, it has not been paid for the air transport provided to D.C.

Request Nos. 2 and 3. In these requests, Sentinel seeks any contracts and/or agreements that Tri-State had with Yuma Regional Medical Center and Banner Desert Medical Center during 2014-2016. As Sentinel argues, it is possible that Tri-State had a contractual obligation to abide by certain billing practices when transporting a patient to either of these hospitals or that the hospitals were required to use Tri-State exclusively for air transport. Such information would be relevant to the issue of whether the charges in this case were reasonable.

Request No. 4. In this request, Sentinel seeks any contracts and/or agreements that Tri-State had with Medicaid for the provision of air ambulance service in Arizona between 2014-2016. Sentinel argues that these contracts and/or agreements are relevant because its reasonableness opinion is based, in part, on the significantly lower reimbursement rate used

by Medicare/Medicaid for air transport. But, if Sentinel already knows what the Medicaid reimbursement rate is, as it appears it does, then any contract Tri-State might have with Medicaid is not relevant to any of the issues in this case.

Request No. 5. In this request, Sentinel seeks documents related to marketing and/or business development that were used to promote Tri-State's air ambulance services to Yuma Regional Medical Center and/or Banner Desert Medical Center between 2014 and 2016. Sentinel argues that Tri-State's marketing materials are relevant because they could contain a representation that Tri-State would abide by certain billing practices or that it would provide certain benefits in exchange for an exclusivity agreement or an agreement regarding quotas.

Tri-State's marketing materials are not relevant to any issues in this case. Any agreements that Tri-State had with the two hospitals would be in Tri-State's contracts with the hospitals, not in the marketing materials.

Request No. 6. In this request, Sentinel seeks any contracts and/or agreements between Tri-State and any insurance company and/or health care benefit provider related to air ambulance services provided by Tri-State in Arizona in effect between 2014 and 2016. Sentinel argues that what Tri-State charges other insurance companies is directly relevant to the question of whether Tri-State's charges in this case were reasonable.

If Tri-State had a contract with CBS, that contract would be relevant, but agreements that Tri-State might have with other insurance companies are not relevant to the issue of whether Tri-State's charges in this case were reasonable.

Request No. 7. In this request, Sentinel seeks any written complaints and/or reviews against Tri-State for air ambulance services rendered in Arizona between 2014-2016. Sentinel argues that other complaints related to exorbitant charges are relevant as they would be evidence that Tri-State's charges in this case were not reasonable. Sentinel also argues that other complaints might show that Tri-State would be willing to forgive some or all of the Cheatwoods' bill because it has done so in other cases.

Reviews or complaints involving air transports of patients other than D.C. are not relevant to whether the charges for D.C.'s transport were reasonable. Such information would involve factual situations that are unlikely to be similar to the factual situation in this case. And, what Tri-State has done in other cases involving different patients in different circumstances would be little indication of what Tri-State might do in plaintiffs' situation.

Request No. 8. In this request, Sentinel seeks a copy Tri-State's billed charges for any patients it transported from Yuma Regional Medical Center to Banner Desert Medical Center in 2014 and 2015. Although the transport of each patient is presumably not the same because each patient requires different care during flight, what Tri-State has billed other patients transported between the same two hospitals as D.C. may have some relevancy to the issue of whether Tri-State's charges in this case were reasonable.

Request No. 9. In this request, Sentinel seeks the policies and procedures that Tri-State used to determine whether air transportation was medically necessary that were in effect

in 2014-2016. If Tri-State had such policies and procedures, they would be relevant to the issue of whether the air transport in this case was medically necessary.

Request No. 10. In this request, Sentinel seeks Tri-State's policies and procedures that were in effect between 2014-2016 related to billing non-insured patients and patients whose insurance coverage excluded coverage of air ambulance services. Tri-State argues that these policies and procedures are irrelevant because this case does not involve a non-insured patient or a patient whose insurance excludes coverage of air ambulance services.

Tri-State's charging policies for non-insured and non-covered patients are relevant. These policies could show that Tri-State is charging insured patients, such as D.C., differently than non-insured and non-covered patients, which could go to the reasonableness of Tri-State's charges in this case.

Request No. 11. In this request, Sentinel seeks Tri-State's financial reports for air ambulance services provided from bases in Arizona that show gross revenue, net revenue, operating expenses, non-operating expenses and net income for the years 2014-2016. Sentinel argues that this information is relevant because it would allow Sentinel to compare the costs of flights to what a patient is actually charged.

While such information as it relates to the transport of D.C. is relevant, that is not what Sentinel is requesting here. Sentinel is requesting two years worth of Tri-State's undifferentiated Arizona revenue, expense, and profit information. Such information is not relevant to any claims or defenses in this case.

Request No. 12. In this request, Sentinel requests documents showing the following for years 2014-2016: air ambulance charges, payments, payor information, and contractual adjustments and write offs. Sentinel argues that data related to when, why, and how much Tri-State writes offs patient bills is directly related to the issue of whether Tri-State's charges in this case were reasonable. Sentinel also argues that this information would be relevant to plaintiffs' damage claims because if Tri-State has agreed to write off some or all of plaintiffs' bill, then plaintiffs' contention that they have suffered other "financial harm" would be undermined.

What Tri-State has done in terms of plaintiffs' bill is relevant. But whether Tri-State has written off any portion of another patient's bill is not relevant to any of the claims and defenses in this case, given that each patient's circumstances are unique.

In sum, in terms of relevancy, the documents being sought in Request Nos. 2, 3, 8, 9, and 10 are relevant to the claims and defenses in this case. The documents being sought in Request Nos. 4, 5, 6, 7, 11 and 12 are not relevant to any of the claims and defenses in this case.

Tri-State next argues that Request Nos. 2, 3, 8, 9, and 10 should still be quashed because they involve Tri-State's confidential commercial information. "Courts may quash or modify a subpoena if it requires disclosing a trade secret or other confidential ... commercial information." Scientific Games Corp. v. AGS LLC, Case No. 2:17–cv–00343-

JAD–NJK, 2017 WL 3013251, at *3 (D. Nev. July 13, 2017) (citing Fed. R. Civ. P. 45(d)(3)(B)(i)). "In analyzing an objection made under Rule 45(d)(3)(B)(i), the [c]ourt first must determine if the subpoenaed party has shown that the requested information is protected as a trade secret or confidential commercial information." Id. "The party resisting discovery 'must make a strong showing that it has historically sought to maintain the confidentiality of this information.'" Id. (quoting Gonzales, 234 F.R.D. at 684).

The documents at issue are Tri-State's contracts with the two hospitals between which D.C. was transported, a list of its patient billings for transports between those two hospitals, its internal policies and procedures regarding medical necessity, and its internal policies and procedures regarding the billing of non-insured and non-covered patients. "Confidential commercial information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691, 697 (D. Nev. 1994).

Tri-State argues that disclosure of this information to Sentinel will give Sentinel a competitive advantage. Tri-State contends that Sentinel's business model is to analyze the air ambulance market and provide opinions to insurance companies regarding whether Sentinel thinks a particular transport was appropriate. Tri-State contends that Sentinel takes whatever financial and commercial financial information it can obtain and uses it to analyze the air ambulance market.

Tri-State has not made any showing, much less a strong showing, that it has historically sought to keep any of the documents at issue confidential. All Tri-State has done is claim that the documents at issue are confidential and generally claim that it will be harmed if these documents are disclosed to Sentinel. But, "[a]llegations of harm or prejudice must be supported with specific examples or articulated reasoning." Scientific Games Corp., 2017 WL 3013251, at *3. "'[B]road allegations of harm' are insufficient." Id. (quoting AFMS LLC v. United Parcel Serv. Co., 2012 WL 3112000, * 3 (S.D. Cal. July 30, 2012)). Based on what is currently before it, the court is not convinced that the documents at issue are confidential commercial information. Thus, Request Nos. 2, 3, 8, 9, and 10 will not be quashed. Tri-State is compelled to respond to these requests.

However, because some of the requests are being quashed, the court must consider Tri-State's request for attorney's fees pursuant to Rule 45(d)(1). Rule 45(d)(1) provides:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

"Merely losing a motion to compel [or quash] does not expose a party to Rule 45 sanctions." Legal Voice v. Stormans Inc., 738 F.3d 1178, 1185 (9th Cir. 2013). Rather, "[a] court may ... impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." Id. Tri-State has not shown that Sentinel was

acting in bad faith, for an improper purpose, or contrary to existing law. The court declines to award Tri-State any attorney's fees pursuant to Rule 45(d)(1).

As a final matter, pursuant to Rule 45(d)(3)(C)(ii), Tri-State asks to be compensated for its costs and fees incurred in responding to the subpoena. But, "Rule 45(d)(3)(C)(ii), by its own terms, only applies to 'circumstances described in Rule 45(d)(3)(B).'" ATS Products, Inc., 309 F.R.D. at 532. "Those circumstances, which pertain to subpoenas which call for disclosure of trade secrets or [confidential commercial information] do not apply here." Id. Tri-State's request for its fees and costs incurred in responding to the subpoena is denied.

## Conclusion

Tri-State's motion to quash[19] is granted in part and denied in part. The motion to quash is granted as to Request Nos. 4, 5, 6, 7, 11, and 12. Request Nos. 4, 5, 6, 7, 11, and 12 are quashed. The motion to quash is otherwise denied.

Sentinel's motion to compel[20] is granted in part and denied in part. The motion to compel is granted as to Request Nos. 2, 3, 8, 9, and 10. Tri-State shall respond to these requests. The motion to compel is otherwise denied.

DATED at Anchorage, Alaska, this 1st day of February, 2018.

/s/ H. Russel Holland
United States District Judge

---

[19]Docket No. 92.

[20]Docket No. 102.